SARTAIN, Judge.
William G. McNabb, appellant, was suspended from his employment as a sergeant in the Division of State Police by a letter dated June 18, 1968, as a result of criminal indictments on charges of public bribery having been brought against him in Ascension Parish. Notwithstanding his acquittal on the trial of charges in Ascension Parish and the pendency of other similar charges in West Baton Rouge Parish, he was dismissed from the Division of State Police after a departmental investigation by a letter dated June 9, 1969, and effective June 11, 1969. He has appealed both the suspension and the dismissal, which were upheld by the Civil Service Commission. For reasons hereinafter stated- we affirm the decision of the Civil Service Commission.
The charges enumerated in the letter of dismissal included the following:
(1) during the months of September, October, November and December, 1966, appellant had received approximately $1,-600.00 per month from Harbert Construction Corporation, a pipeline construction company regulated by the Division of State Police;
(2) during the months of April, May, June July, August, September and October, 1967, appellant received $1,600.00 per month from Saulsman-Slack Construction Company, Inc., a pipeline construction company also regulated by the Division of State Police;
(3) during the period from April to October, 1967, appellant rented a bulldozer to the same Saulsman-Slack Construction Company for $800.00 per month; and
(4) that appellant had violated the provisions of L.R.S. 42:1113 or 42:1114 and Section II, Paragraph 14, and Section X, Paragraph S, of the State Police Manual.
The pertinent provisions of the cited statutes are as follows:

"L.RS. 42:1113. Compensation for state employees from non-state sources

;{: j(t ‡ >|i ;[< ‡
B. Compensation for Service to Others. —No state employee shall receive any thing of economic value for or in consideration of personal services rendered, or to be rendered, to or for any person *152 during the term of his state employment unless such services meet each of the following qualifications:
* * * * * *
(4) The services are neither performed for nor compensated by any person from whom such employee would be prohibited by R.S. 42:1114 from receiving a gift; unless the services and compensation are fully disclosed in writing to the head of the employee’s agency. (Emphasis supplied.)
* * * * * *

“L.R.S. 42:1114. Gifts.

General rule for all employees. — No state employee shall receive, accept, take, seek or solicit, directly or indirectly, any thing of economic value as a gift, gratuity or favor from any person or from any officer, director, agent or employee of such person, if such person:
* -* -» * * *
(2) Conducts operations or activities which are regulated by such employee’s agency; or
iK ‡ ifc j{í íjí
And if such state employee knew or reasonably should have known of the existence of any of the conditions covered above.”
The Louisiana State Police Manual contains the following provisions:
“ SECTION II
PERSONNEL POLICIES
* * * * * *
14. Outside Employment
Any member of the uniform division of the Louisiana State Police must obtain permission from the Director or Superintendent before obtaining outside employment.
“ SECTION X
OFFICIAL STATEMENTS, EVIDENCE AND LEGAL RELATIONSHIPS
* * * * * *
5. Collecting Fees or Remuneration
No member of the State Police shall accept, collect or attempt to collect costs or fees or remuneration for services except on written permission from the Superintendent.
* * * »
Appellant at the Commission hearing conceded most of the factual allegations contained in the letter of dismissal, except that his employment with Harbert Construction was from July through the middle of October, rather than from September through December, of 1966 and that the bulldozer rental in 1967 to Saulsman-Slack Construction was not for the full time alleged but only from time to time when it was needed by the company.
He denies, however, that his conduct was in violation of the cited statutes and rules of the manual.
Section II, Paragraph 14, requiring permission for outside employment, first appeared in the police manual edition which became effective on September 1, 1966. Appellant contends that he discussed the possibility of employment with Harbert Construction with his troop commander in June of 1966 and secured permission to take the job. A few weeks after the regulation became effective, or about the middle of October, his job was terminated and he contends that the regulation should not be applied retroactively to outside employment secured prior to its effective date and terminated shortly thereafter. We agree that such an interpretation would be harsh indeed and the dismissal should not be upheld on that ground alone, i. e., violation of Section II, Paragraph 14, with respect to the job with Harbert Construction.
*153 On October 28, 1966, appellant sent the following letter to Col. Thomas D. Burbank, Superintendent of the Division of State Police:
“I am requesting permission for out-side employment, in accordance with the Louisiana State Police manual.
“I operate heavy equipment in my off duty hours, for use in clearing land, etc. I have no permanent employer and most of my work is on bid, where I will lease a piece of equipment myself. This is only part time and I work a few hours each day. At present I have no part time work and no jobs in sight for the immediate future.”
The reply to this request was dated October 31, 1966:
“This is to acknowledge receipt of your letter of October 28, to Colonel Thomas D. Burbank, in which you request permission to work as a heavy equipment operator in your off-duty hours.
“Please be advised that Colonel Burbank has this date directed me to reply to your letter, granting you permission to work in your off-duty hours doing the type of work described in your letter.”
It was some five months later that appellant commenced his employment with Saulsman-Slack Construction as a safety officer, primarily responsible for escorting and directing the movement of equipment on highways, at a salary of $1,600.00 per month. Appellant testified that he inquired of his troop commander whether or not he should submit another letter requesting permission to secure the job and was advised that it would not be necessary to do so. The Commission found that appellant was not justified in relying on this advice without seeking other authority, inasmuch as the permission previously granted was limited to the type of work described in appellant’s request and the nature and duration of the work with Saulsman-Slack Construction was entirely different from that requested. We agree with this interpretation as opposed to the contention of appellant that since the regulation does not prescribe any required form or content for such request or permission the granting of his request was a blanket approval of any and all kinds of outside employment. It is obvious that the Division of State Police reserved the right to approve or disapprove the various kinds of outside employment sought by its employees and both the request by appellant and the permission granted in this case were by their clear language restricted in scope.
Appellant contends that Section X, Paragraph 5, prohibiting the acceptance of remuneration for services except on written permission from the Superintendent, does not apply to outside employment but only to services within the course and scope of the employment with the Division of State Police. We are inclined to agree with this position, inasmuch as all of the other paragraphs of that section unmistakably relate to the conduct of State Policemen within the scope of their official duties and we are concerned in this case with the appellant’s off-duty activities.
The Civil Service Commission found that appellant had violated his statutory duty to disclose in writing to the head of his agency the services and compensation associated with his outside employment both with Harbert Construction and Sauls-man-Slack Construction. R.S. 42:1113 and 42:1114 were enacted in 1964 and were in effect at those times. These statutes, quoted supra, prohibit inter alia a state employee from receiving a gift or compensation from a person who “conducts operations or activities which are regulated by such employee’s agency”. The appellant hinges his argument against the application of these statutes on the contention that the Division of State Police is not empowered to formulate regulations and thus cannot be said to “regulate” the operations or activities of pipeline construction companies. It is argued that the true power of regulation is vested in the legislature and *154 the Public Service Commission and that the Division of State Police is only concerned with the enforcement of laws relating to the public safety and use of the highways. We do not find the argument persuasive. We must consider the context and purpose of the statutes in the chapter on governmental ethics (Chapter 15 of Title 42), which guard against the possibility that private interest might receive favored treatment or substantial benefits from an agency to which the private interest must answer in conducting at least some of its operations and activities by means of economic reward • to a member of the agency. If the police did not discharge the duty of enforcement, the construction companies, whose activities include the use of the highways and the obtaining of permits for certain operations, could not be said to be regulated effectively as a practical matter. The legislature which enacts laws relating to use of the highways has no means of implementing those controls except through enforcement by the Division of State Police. The power of regulation is empty in the absence of an accompanying power of enforcement. Appellant’s jobs were to help facilitate these operations and there was ample evidence that the companies which employed him would otherwise have felt compelled, as a safety measure, to request the Division of State Police to assign officers to assist them. The fact that appellant was paid $1,600.00. per month in cash for such services hardly supports the contention that the Division of State Police had no regulatory power over the conduct of the construction companies’ operations and activities. Certainly, we cannot say that the Civil Service Commission erred in finding that the term “regulate” in R.S. 42:1114 was intended to include the control inherent in the power of enforcement, particularly in view of the standards of ethical conduct expected of law enforcement officers.
However, appellant contends that R.S. 42:1121 H. prohibits the commencement of any action to enforce the provisions of R.S. 42:1113 and 42:1114 more than two years after an alleged violation and that all charges referring to his conduct before June 11, 1967 (two years prior to the effective date of his dismissal), were not properly before the Commission. We do not agree. Appellant was suspended on June 18, 1968, less than two years after the first of the alleged violations had occurred, and the dismissal the following year was based upon the same conduct. Thus, the action by his agency was timely commenced within the meaning of the statute.
Lastly, it is argued that the Civil Service Rules forbid a suspension of more than ninety days and that appellant is entitled to benefits of which he was deprived after that time. The rule in question is Rule 12.2 (b):
“No suspension without pay shall exceed ninety (90) calendar days without the approval of the Commission.”
It is clear from the record that the Commission heard arguments on the matter of the suspension and approved as reasonable the indefinite time period imposed by Section X, Paragraph 14, of the State Police Manual:
“Any member of the State Police who is officially charged with any crime will be immediately suspended until he is either exonerated or found guilty of such crime. If such member is convicted of said crime, he will be immediately dismissed.”
The opinion of the Commission stated that “it is not unreasonable to provide for the suspension from duty of a law enforcement officer when he himself is faced with pending charges of the commission of a crime”. We find that the required approval under Rule 12.2(b), supra, for a suspension of more than ninety days was given by the Commission.
For the above and foregoing reasons, we affirm the decision of the Civil Service *155 Commission that sufficient legal cause was shown to support the suspension and dismissal of William G. McNabb by the Division of State Police. The costs of this appeal are assessed against the appellant.
Affirmed.